## LEACH VS. FOWLER'S DEVISEES.

The grantor in a deed for a valuable consideration with general warranty is an incompetent witness to sustain the title of his grantee: (17 *Ark.* 179,) and the same interest that disqualifies him would disqualify his wife.

Where an attorney purchases property under an execution on his client's judgment, the question, who is entitled to the property? is between the client and attorney, but does not concern other parties, (20 *Ark.* 583.)

Where a father, immediately before a judgment against him, conveys all his property subject to execution to his minor son, who is absent and does not appear to have the means to purchase, it is sufficient to put the grantee upon proof that the purchase was for an actual consideration and in good faith.

### *Appeal from Pulaski Chancery Court.*

Hon. HULBERT F. FAIRCHILD, Chancellor.

GARLAND, for the appellant.

The testimony of the wife of John H. Leach was improperly rejected, because Leach had no interest in the cause. His deed to J. W. T. Leach, whether fraudulent or not, as between them divested him of all interest in the land. 1 *Ohio* 207; 3 *Monroe* 378; 16 *Johnson Rep.* 189; 8 *Leigh* 510; *Britt vs. Aylett,* 6 *Eng.* 475.

The interest to disqualify must be certain and fixed—hope of benefit only goes to credibility. 1 *Phil. Ev.* 47–8.

A minor living apart from his father is entitled to his own earnings, and may become, by loaning them, a creditor of his father, who as such creditor may legally prefer him. *Sexton vs. Wheaton and wife,* 8 *Wheat.* 229; 4 *Wheat.* 503.

To avoid a deed for fraud both parties must participate in the fraud. 17 *Ark.* 146; 4 *Eng.* 485.

STILLWELL & WOODRUFF, for appellees.

A voluntary conveyance by a party indebted having no other

property is void as to creditors whether existing or subsequent. *Young & Young vs. Pate, et al.*, 3 *John. Ch. Rep.* 500; 4 *John.* 490; *Wright's Ohio Rep.* 82.

The earnings of a minor, whether with or absent from his father, belong to his father. *Bell vs. Hollenback, Wright's Ohio Rep.* 751.

Fraud in the grantor vitiates a deed though the grantee be innocent of the fraud and a *bona fide* purchaser. 2 *John. Ch. Rep.* 42; 6 *Missouri* 580.

A voluntary conveyance by a father is presumptively fraudulent and void as to future as well as existing creditors. 1 *Peter C. C. R.* 464.

Mrs. Leach was incompetent—her husband was interested at least to the extent of costs.

The admission in the deed of the receipt of the consideration money is no evidence against a party claiming against the deed. 10 *Peters* 211; 10 *Yerger* 237; 12 *Ark.* 286; *Sug. on Ven.* 544.

Hon. HARRIS FLANAGIN, Special Judge, delivered the opinion of the Court.

The facts, so far as material to the question to be decided here, are:

The bill was filed on the twenty second day of October, 1851, by Absalom Fowler, against John H. Leach, John W. T. Leach, and Jacob W. Parker, and charges:

That John H. Leach was indicted in the District Court of the United States for the district of Arkansas, for cutting and removing timber from the lands of the United States: he pleaded not guilty, was tried and a judgment was rendered against him for sixty cents fine, and one hundred and forty-six dollars and five cents costs.

A fi. fa. issued on the judgment, on the sixth day of August, A. D. 1851, and was levied on John H. Leach's property, which was sold to Fowler, who received a deed. Leach had rented the land to Jacob W. Parker, who was in possession, and

refused to recognize Fowler's title. The rents are of the value of $300.

John H. Leach being in debt, and anticipating a judgment on the indictment, in order to hinder, delay and defraud his creditors, and especially the United States, conveyed the property, afterwards levied on, to John W. T. Leach, his minor son, without consideration.

The deed was made at Little Rock, while the son was in Louisiana and knew nothing of it. The minor had no money, made no contract: has always lived at his father's.

Prays for a decree for rents; that the deed to Leach be canceled and his title be quieted.

On December 9th, 1851, a decree *pro confesso* was taken against John H. Leach, and a guardian *ad litem* was appointed, who answered for the minor, and who exhibited a deed from John H. Leach, to John W. T. Leach, dated and acknowledged on the tenth day of April, 1851, acknowledged in Pulaski county, and recorded in Pulaski county, on the twenty second day of April, A. D. 1851. The deed contains a general warranty, and is for the expressed consideration of twelve hundred dollars.

The record of the indictment and proceedings is exhibited with the proper certificates, to Fowler's bill.

Before the hearing in this cause the chancellor, on the motion of the complainant, suppressed the deposition of Mary Leach, on the ground that she was the wife of John H. Leach, against whom a decree *pro confesso* had been rendered.

The chancellor also suppressed the following clauses in the deposition of William H. Toler: "That within the last four years he has heard John H. state that John W. T. has loaned him money at different periods: that he has heard John H. say, that he intended to give John W. T. the house and lot owned by him in Little Rock: he understood that John H. made a deed of the same to the said John W. T. for twelve hundred dollars some months ago." "John H. also stated to him that he intended to give the said property to the said John W. T."

10

These clauses were suppressed because they were the declarations of the defendant John H. Leach.

The case was heard upon the bill and exhibit, answer and exhibit, replication, and the testimony of John Wassell, and Thomas D. Merrick, for complainants, and Henry Griffith, Joseph Faquino, and a part of the deposition of William H. Toler for defendant.

John Wassell, on the 29th day of January, 1858, testified that John H. Leach left Little Rock, six or eight years before, was well acquainted with John H. and his family, and knew of no property left by him except that in controversy. John W. T. Leach was the son of John H. I suppose him to be 14 or 15 years old when he left. Do not know of John W. T. having any property when he left. John H. afterwards had a flat boat loaded with lumber at Little Rock.

On the same day, Thomas D. Merrick testified, that he was well acquainted with the defendant John H. Leach, and his family. His family left before his conviction in the Federal Court. He staid about one year after his family left, and I know of no property subject to execution and belonging to him when he left. When he left, John W. T. Leach was about 14 years of age.

Henry Griffith, on the 11th day of October, 1856, testified that he is acquainted with John H. Leach. He left here about 1851; thinks when he left there were two lots or fractions owned by him. Does not know that he had any other kind of property.

Joseph D. Faquino, on the seventh day of June, 1852: John W. T. Leach is about 17 years of age, and the son of John H. Leach. John W. T. was a clerk in a provision store, pilot on a ferry boat, and was then pilot on a job boat. He has been working for himself for some years.

That part of William H. Toler's deposition not suppressed. June 7th 1852: Has known John W. T. Leach for nineteen years, he is near twenty years of age, and is the son of John H. Leach. He has followed various occupations, and is now engineering. He has been working for himself for four years.

At the hearing there was a decree for the complainant, and the defendant John W. T. Leach appealed.

Appellants contend that the chancellor erred in suppressing the deposition of Mary Leach, wife of John H. Leach. They contend that John H. Leach would have lost the land if either the complainant or defendant recovered; and of course his interest was equal. Without noticing other objections to the deposition, John H. Leach had given a deed with general warranty to John W. T. Leach, and if he failed in sustaining it, he was liable to him for twelve hundred dollars (the consideration.) This interest would of course disqualify him, see *Arnold vs. McNeill*, 17 *Ark.* 178; and the same interest which would disqualify him would disqualify his wife.  1 *Greenleaf* 341.

It is objected that the chancellor ought not to have suppressed the declarations of John H. Leach, as detailed by the witness, William H. Toler; and the appellant gives as a reason that his declarations were against his interest; and for this reason admissible; but on the contrary, they were directly calculated to relieve him from any liability on his warranty, and consequently inadmissible, and for the same reason his testimony would have been inadmissible.

It is contended that the complainant, by showing that he was the attorney of the United States, in the case wherein the fi. fa. was issued upon which the property was sold, showed that the title was in the United States, and not in the complainant. This court in *Estes vs. Boothe*, 20 *Ark.* 583, decided that this is a question between the plaintiff in execution and the attorney, and does not concern other parties.

According to the testimony of Wassell, John H. Leach's family left, from 1850 to 1852; according to Merrick, before April, 1851. Leach staid one year after. According to Griffith, John H. Leach left in 1851. This testimony can all stand, and John H. Leach's family have left early in 1850.

John W. T. Leach was, in April, 1851, 15 or 16 years of age, according to Wassell; 15 years of age, according to Merrick; 16 years of age, according Faquino, and 18 years of age according to Toler.

According to Toler, John W. T. had been at work for himself after June, 1848, and according to Faquino, at least as early as June, 1849. It appears his acquaintance, Wassell, did not know of any property he had in 1850; and it is not proved that he saved anything before April, 1851: That John H. Leach was in Little Rock when he executed the deed, and John W. T. Leach was in Louisiana: That John W. T. Leach was the son of John H. Leach.

That the deed was made in the expectation a recovery would, or at least might be had against him, which would amount to one hundred and forty-six dollars, and might have been for much more: That he conveyed all his property subject to execution in the State.

Where a father, immediately before a judgment, conveys all his property subject to execution to his minor son, of from 15 to 18 years of age, in his absence, and who does not appear to have the means to purchase, it is sufficient to put the grantee upon the proof that it was a purchase upon an actual consideration and made in good faith.

This conclusion is arrived at, while conceding that fraud must be proven, and a deed imports the payment of the consideration expressed.

Let the decree be affirmed.

Mr. Justice FAIRCHILD did not sit in this case.